### Neil KING and Lillian King

v.

### Richard KING.

Supreme Judicial Court of Maine.

Argued March 13, 1986.

Decided April 8, 1986.

Walker & Ross, Michael L. Ross, (orally), Ellsworth, for plaintiffs.

Foster Law Offices, Philip R. Foster (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN and GLASSMAN, JJ.

WATHEN, Justice.

Defendant Richard King appeals from a judgment entered in the Superior Court (Hancock County). The jury returned a verdict in plaintiffs' favor in an action for illegal eviction and assessed damages in

the amount of $11,060.[1] On appeal defendant argues (1) that the Superior Court lacks subject-matter jurisdiction to entertain an action for illegal eviction, (2) that the illegal eviction statute, 14 M.R.S.A. § 6014 (Supp. 1985–1986), precludes jury trials, and (3) that there is insufficient evidence to support the verdict. We find no merit in the first two points. We conclude, however, that a substantial part of the damage award is unsupported by any evidence and accordingly, we sustain the appeal.

## I.

Plaintiffs Neil and Lillian King, husband and wife, lived in Nashua, N.H. before moving to Maine. Neil King is a general contractor with a variety of construction and heavy machinery experience. Neil's brother, defendant Richard King, is the owner of a construction company located in Lamoine. In March of 1981 defendant spoke with plaintiffs about the possibility of moving to Maine. Initially, defendant offered only a job for his brother, but later he proposed to help his brother build a house for a total cost of less than $35,000. After further discussion, the parties agreed that defendant would arrange to move plaintiffs to Lamoine, that defendant would employ Neil King in his construction business at a wage of $5 an hour, and that defendant would provide plaintiffs with a parcel of land and assistance in building a house. Plaintiffs moved to Maine on June 10 and 11, 1981.

Upon their arrival, plaintiffs lived with defendant and his wife in a house located across the street from the building site for their home. Neil King immediately went to work for his brother's corporation, and work began on plaintiffs' house in September, 1981. The house was ready for occupancy in December, so plaintiffs, their two children, and defendant, recently divorced, moved in. Problems arose in January of 1982 when defendant's girlfriend began to

reside in the house. Near the end of January, defendant abruptly terminated his brother's employment. While plaintiffs were away for the weekend, defendant changed the locks on the house, and on their return he refused to allow them entry. Plaintiffs were ultimately required to bring a legal action in order to recover their personal property located in the house.

Plaintiffs' filed a complaint against defendant on July 22, 1982 and thereafter amended the complaint to include five separate causes of action. Counts I and II alleged the existence of enforceable construction and employment contracts between Neil King and Richard King. Count III alleged that defendant illegally evicted plaintiffs from a residence owned by defendant and being built for plaintiffs. Count IV alleged that defendant intentionally inflicted emotional distress upon the plaintiffs, and Count V invoked the doctrine of promissory estoppel. A three-day jury trial began on August 28, 1985 and at the close of plaintiffs' case, defendant moved for a directed verdict on all five counts. The court granted the motion as to four counts, leaving only the illegal eviction issue for the jury's consideration. Plaintiffs do not appeal from the entry of the directed verdicts. The only matter before this Court is defendant's appeal from the judgment on the claim for illegal eviction.

## II.

Defendant argued before the Superior Court and now argues on appeal that the Superior Court lacked subject-matter jurisdiction because exclusive jurisdiction over claims for illegal eviction rests in the District Court. Defendant premises his argument on the fact that the illegal eviction statute, 14 M.R.S.A. § 6014 (Supp.1985–1986),[2] is contained within Chapter 709, entitled "Entry and Detainer." Although ex-

---

1. The judgment entered for defendant on a counterclaim is not involved in this appeal.

2. Section 6014 provides as follows:

   1. **Illegal evictions.** Evictions which are effected without resort to the provisions of this chapter are illegal and against public policy.

clusive jurisdiction over forcible entry and detainer actions is granted to the District Court under 14 M.R.S.A. § 6003 (Supp. 1985–1986), that provision does not control the action before us. Defendant ignores the explicit language set forth in 4 M.R.S.A. § 152(5)(G) (Supp.1985–1986), that confers concurrent jurisdiction on both the District and Superior Court in claims involving illegal eviction. We conclude that the Superior Court had subject-matter jurisdiction in this case.

■ Defendant next argues that there is no right to trial by jury in an action for illegal eviction. He points to language in section 6014(2) stating that "the *Court* shall take one or both of the following actions" (emphasis added), as evincing a legislative intent to foreclose jury trials. The Maine Constitution provides a right to jury trial for legal but not equitable claims. Me.Const.art. 1, § 20; *Cyr v. Cote*, 396 A.2d 1013, 1016 (Me.1979). Where a plaintiff seeks damages as full compensation for an injury, the claim is legal and plaintiff is entitled to a jury trial. *Cyr*, 396 A.2d at 1019. Against this background, the vague statutory reference to "the Court" does not suggest the absence of a right to jury trial.

### III.

After the verdict of the jury was returned, defendant moved for a judgment n.o.v. and for a new trial. Defendant claimed that the evidence did not adequately support a finding that plaintiffs were his tenants, nor did it support the amount of damages awarded. The Superior Court denied the motion. The record before us sustains the finding of a tenancy relationship, but it does not support the damage award. The Superior Court erred in failing to grant a new trial on the issue of damages.

■ In order to be recoverable, damages must not be uncertain or speculative but must be grounded on facts in evidence. *Decesere v. Thayer*, 468 A.2d 597, 598 (Me. 1983) (quoting *Michaud v. Steckino*, 390 A.2d 524, 530 (Me.1978)). At trial, plaintiffs established in a general way that they had sustained damages and incurred expenses associated with defendant's acts. The evidence relating to the amount of damages, however, may be summarized as follows: Plaintiffs spent approximately $400. on carpeting, electrical fixtures, and paint for the new house. After plaintiffs recovered their personal property, they discovered that some of the property was damaged and some was missing. As a result of being locked out of the house, plaintiffs were required to rent a room at a motel in Trenton. Plaintiffs offered only a general

---

Illegal evictions include, but are not limited to, the following.

**A.** No landlord may willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to, water, heat, light, electricity, gas, telephone, sewerage, elevator, or refrigeration, whether or not the utility service is under the control of the landlord, except for such temporary interruption as may be necessary while actual repairs are in process or during temporary emergencies.

**B.** No landlord may willfully seize, hold or otherwise directly or indirectly deny a tenant access to and possession of the tenant's rented or leased premises, other than through proper judicial process.

**C.** No landlord may willfully seize, hold or otherwise directly or indirectly deny a tenant access to and possession of the tenant's property, other than by proper judicial process.

**2. Remedies.** Upon a finding that an illegal eviction has occurred, the court shall take one or both of the following actions.

**A.** The tenant shall recover actual damages or $100, whichever is greater.

**B.** The tenant shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorneys' fees.

**3. Good faith.** A court may award attorneys' fees to the defendant, if, upon motion and hearing, it is determined that an action filed pursuant to this section was not brought in good faith and was frivolous or intended for harassment only.

**4. Nonexclusivity.** The remedies provided in this section are in addition to any other rights and remedies conferred by law.

description of the lost and damaged property and offered absolutely no evidence of value. Further, they offered no evidence of how much money they spent on housing after they were evicted.

Although damages need not be proved to a mathematical certainty, an award must be supported by some evidence of the value of property damaged or expenses incurred. The record does not permit us to determine what factors the jurors considered in arriving at their verdict. Considering the absence of any evidence of value, the verdict rests on sheer speculation and conjecture.

The entry must be:

Judgment vacated.

Remanded for new trial on the issue of damages.

All concurring.