**CITY OF PORTLAND**

v.

**Vincenzo DePAOLO, et al.**

Supreme Judicial Court of Maine.

Argued May 12, 1989.
Decided Dec. 8, 1989.

David Lourie, Charles Lane (orally), Portland, for plaintiff.

E. James Burke (orally), Bell & Burke, Lewiston, for defendant.

Richard Poulos, Stuart Tisdale, Poulos, Campbell & Zendzian, Portland, for amicus curiae, M.C.L.U.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

ROBERTS, Justice.

Vincenzo DePaolo and Charles Graten appeal from judgments of the Superior Court (Cumberland County, *Perkins, J.*), entered on a jury verdict in favor of the City of Portland on three civil violations pursuant to M.D.C.Civ.R. 80H.[1] DePaolo, the owner of a Portland store, The Treasure Chest, and Graten, a clerk in the store, were each charged with four violations of the Obscenity Ordinance, Portland City Code, art. IV, §§ 17–61 to 17–63 (1982),[2] after Graten sold several magazines to undercover Portland police officers.

This is the third time these cases have appeared before us. In *City of Portland v. Jacobsky*, 496 A.2d 646 (Me.1985), we determined that the Obscenity Ordinance was properly enacted, that proceedings brought pursuant to the Ordinance were civil in nature, and that the Ordinance was constitutional under both state and federal constitutions. In *City of Portland v. DePaolo*, 531 A.2d 669 (Me.1987), we determined that DePaolo and Graten were enti-

tled to a jury trial. DePaolo and Graten now argue that the evidence was insufficient to sustain a verdict and that the Superior Court erred in selecting the jury. We affirm the judgments.

## I. PROCEDURE

At a pretrial conference, there was extensive discussion concerning the composition of the jury. The City argued that since the jury has to apply community standards,[3] knowledge of those standards was a prerequisite for service. Jurors "should ideally be residents of ... Portland and be able to state that they have an idea of what Portland's community standards are." Defense counsel argued that potential jurors should be excluded if they had pretrial knowledge of Portland's community standards and that the jury should decide community standards based on evidence presented to them rather than by relying on their own knowledge. During voir dire the court asked whether any juror lacked sufficient knowledge or familiarity with the contemporary community standards of the City of Portland to be able to apply the test of obscenity under the ordinance. The record reflects that no potential jurors responded to the question.

At trial, two police officers testified they purchased from Graten five magazines which were introduced as exhibits. The City also introduced a copy of the Ordinance and the defendants' responses to the City's requests for admissions. At the close of the City's case, defense counsel moved for a directed verdict or dismissal on the ground that the City had failed to produce any evidence of contemporary community standards. After the court denied de-

1. The Maine District Court Civil Rules were consolidated with the Maine Rules of Civil Procedure on July 1, 1987.

2. The Ordinance is set forth in pertinent part in *City of Portland v. Jacobsky*, 496 A.2d 646, 648 n. 1 (Me.1985).

3. Counsel made this argument in light of *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–2615, 37 L.Ed.2d 419 (1973), wherein the United States Supreme Court announced a tripartite test for the determination of obscenity:

The basic guidelines for the trier of fact must be: (a) whether "the average person, *applying contemporary community standards"* would find that the work, taken as a whole, appeals to the prurient interest ... (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* (citations omitted) (emphasis added).

fense counsel's motion the defense rested without presenting evidence.

In its instructions to the jury, the court stated, "[Y]ou have the ability to utilize your own sense of views of the hypothetical average person in the community." Defense counsel objected to this language, arguing, "I don't think that's a correct statement of the law. We are talking about actual community standard and actual person, and not a hypothetical person." The court denied defense counsel's request for reinstruction but told the jury, if they were not persuaded that the exhibits violated contemporary community standards as of January 1983, then the evidence was insufficient and City had not proved its case. The jury returned a special verdict establishing three of four violations in each citation[4] and the court assessed fines against each defendant totalling $450. DePaolo and Graten filed timely appeals following the denial of their motions for new trial or judgment notwithstanding the verdict.

## II. SUFFICIENCY OF THE EVIDENCE

■ DePaolo and Graten argue that the Superior Court was incorrect in denying their motions for directed verdict and judgment notwithstanding the verdict. They do not contend that a jury could not rationally conclude that the magazines were obscene. Indeed, the evidence would be sufficient even under a heightened standard of appellate review potentially required by the first amendment. *See Bose v. Consumer Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). These defendants contend that evidence of contemporary community standards was not presented at all.

In *City of Portland v. Jacobsky,* 496 A.2d 646, 649 (Me.1985), we noted the continued vitality of the three-part test set forth in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–2615, 37 L.Ed.2d 419 (1973), to delineate the scope of ob-

scene expression not protected by the constitutional safeguards of the First Amendment. In refusing to extend state constitutional protection to obscene expression that under the *Miller* test does not enjoy federal constitutional protection, we adopted the meaning of obscenity as defined by federal decision, *Jacobsky,* 496 A.2d at 649.

According to the United States Supreme Court, a plaintiff need not introduce evidence of contemporary community standards in a criminal jury trial involving obscenity. In *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), (now Chief) Justice Rehnquist stated that:

> [T]he [*Miller*] test was stated in terms of the understanding of "the average person, applying contemporary community standards." .... When this approach is coupled with the reaffirmation in *Paris Adult Theatre I v. Slaton,* 413 U.S., [49] at 56 [93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973)], ... of the rule that the prosecution need not as a matter of constitutional law produce "expert" witnesses to testify as to the obscenity of the materials, the import of the quoted language from *Miller* becomes clear. A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his own knowledge of the propensities of a "reasonable" person in other areas of the law.

*Hamling,* 418 U.S. at 104–05, 94 S.Ct. at 2900–01. Subsequent state and federal cases have applied this standard in non-jury civil and criminal obscenity proceedings. DePaolo and Graten do not cite and we have not found any civil jury trial case involving obscenity. Although the case at bar is neither a jury nor non-jury criminal trial nor a non-jury civil proceeding, those types of cases support our conclusion that there is no requirement that a plaintiff introduce evidence of contemporary com-

---

**4.** Counts II and III each alleged sale of two magazines. Counts I and IV each alleged sale of

a single magazine.

munity standards in a civil jury trial involving obscenity.

In *City of Miami v. Florida Literary Distributing Corp.*, 486 So.2d 569 (Fla. 1986), *cert. den.* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), a non-jury civil obscenity proceeding for injunctive relief, the Supreme Court of Florida stated that:

> There can be no doubt that when a jury is asked to apply the *Miller* test, the jury is deemed competent to determine what the contemporary community standards are and how an average person would apply them. There is no constitutional requirement that evidence of the contemporary community standards be placed in the record. This was the holding in *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), decided the same day as *Miller.*

*City of Miami*, 486 So.2d at 570. There appears to be little doubt that a criminal jury is competent to decide the obscenity question, although a question may arise when the issue is before the court without a jury. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 56 and n. 6, 93 S.Ct. 2628, 2634 and n. 6, 37 L.Ed.2d 446 (1973) (not error to fail to require expert affirmative evidence that materials are obscene when materials themselves are introduced. "[H]ard core pornography can and does speak for itself."); *U.S. v. Various Articles of Obscene Merchandise*, 709 F.2d 132, 136 (2nd Cir.1983) (trier of fact may use own sense of views of hypothetical average person in community); *U.S. v. One Reel of 35 mm. Color Motion Picture Film Entitled "Sinderella," Sherpix, Inc.*, 491 F.2d 956, 958 (2nd Cir.1974) (judge must determine local contemporary community standards but government is not required to produce evidence other than materials).

We see no reason to apply any more rigorous standard of proof in a civil jury trial. We conclude that the City was not required to introduce evidence of contemporary community standards and that the court correctly denied DePaolo and Graten's motions for directed verdict and judgment notwithstanding the verdict.

## III. COMPOSITION OF THE JURY

DePaolo and Graten argue that the court improperly asked a question during voir dire about the jurors' "knowledge and familiarity with the City of Portland to test the contemporary community standards," and that several jurors who did not live in Portland or who were under age at the time the sales occurred were improperly included in the jury. Neither of these arguments is persuasive.

Not only does the record disclose that no potential jurors were excluded in response to the court's question, it is not clear that defense counsel properly preserved any objections he may have had to the composition of the jury. While he qualified his statements with comments such as "[u]nder the rules we are operating under" and "satisfactory under the guidelines we are following," he said "I am not complaining about this jury pool, I am not saying that this jury was drawn improperly or is not empowered to determine the case ... we sit now with a proper jury, properly empaneled." He made no objection after the voir dire question had been asked or after the jury had been finally selected.

Even if defense counsel had properly preserved any objections he may have had, however, nothing but an ordinary jury panel, selected from potential jurors living in Cumberland County, was required in this case. *See* 14 M.R.S.A. § 1211 (Supp.1989) (providing for disqualification of prospective jurors if they are not residents of the county). Because the jurors ultimately determine the contemporary community standards, the voir dire question did not prejudice the defendants.

With regard to their complaint that three jurors were under age at the time the sales occurred, would not have been able to purchase the magazines, and could not have been aware of the contemporary community standards at that time, the defendants make no argument that those standards underwent a substantial change between the sales' date and trial date. Even if they made that argument, however, the jurors in this case, as in any jury case, could have determined such standards

retroactively and collectively. There was no error in the seating or composition of the jury.

### IV. CONSTITUTIONALITY OF THE ORDINANCE

In their reply brief, the defendants present a challenge to the constitutionality of Portland's Obscenity Ordinance on a ground raised by them in *City of Portland v. Jacobsky*, 496 A.2d 646 (Me.1985). We agree with the City that the issue is foreclosed.

The entry is:

Judgments affirmed.

All concurring.