1999 ME 98

**STATE of Maine**

v.

**ONE BLUE CORVETTE.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 15, 1999.

Decided June 28, 1999.

Christopher K. MacLean, MacLean & MacLean, LLC, Camden, for appellant.

Geoffrey Rushlau, District Attorney, Leane Zainea, Dep. Dist. Atty., Belfast, for appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Charles and Diana Audette appeal from a judgment entered in the Superior Court (Waldo County, *Mead, J.*) granting the State's motion for forfeiture of the Audettes' automobile, pursuant to 29–A M.R.S.A. § 2421 (1996). On appeal, the Audettes contend that the court erred by granting forfeiture of their automobile after it determined that, although the Audettes owned the automobile jointly, Mr. Audette was a "sole owner-operator" within the meaning of 29–A M.R.S.A. § 2421(1). We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] For purposes of our analysis, the facts are undisputed. On September 9, 1997, a police officer observed Audette traveling in the left-hand lane of the road at an excessive rate of speed. When the officer pursued Audette and signalled him to pull over, Audette attempted to elude the officer. After finally being stopped, Audette submitted to a breath test at the Waldo County Sheriff's Department. The test revealed a blood-alcohol content of .14%. Audette was arrested for eluding an officer, pursuant 29–A M.R.S.A. § 2414(3) (1996), operating after suspension, pursuant to 29–A M.R.S.A. § 2412–A(1) (1996), operating under the influence, pursuant to 29–A M.R.S.A. § 2411(1) (1996), and failure to stop, pursuant to 29–A M.R.S.A. § 2414(2) (1996). At the time of his arrest, Audette's license was under suspension for a previous OUI conviction. He was indicted on all charges and the State subsequently filed a motion for forfeiture of his vehicle, pursuant to 29–A M.R.S.A. § 2421(1). The court granted Diana Audette's motion to intervene in the forfeiture action.

[¶ 3] Audette pled guilty to operating under the influence, operating after suspension, and eluding an officer,[1] and, following sen-

---

1. The State dismissed the charge of failure to stop.

tencing, the court conducted a hearing on the forfeiture motion.[2] The hearing disclosed that Audette had been operating a blue 1978 Chevrolet Corvette at the time of his arrest, that the Audettes had purchased the Corvette on April 3, 1997, and that the bill of sale identified both Diana and Charles Audette as purchasers of the automobile.[3]

[¶ 4] The court determined that the Audettes were joint owners of the automobile, each holding "an undivided one half interest in the property." The court then addressed the application of the statute and concluded that the State was entitled to forfeiture of the Corvette.

## II. DISCUSSION

[¶ 5] Section 2421(1) reads as follows:

1. **Forfeiture.** After notice and hearing, a motor vehicle must be forfeited to the State when a defendant is:

A. The sole owner-operator of that vehicle; and

B. Convicted of:

(1) OUI; and

(2) A simultaneous offense of operating after suspension when the underlying suspension was imposed for a prior OUI conviction.

The court shall order the forfeiture unless another person satisfies the court prior to the judgment and by a preponderance of the evidence that the other person had a right to possess that motor vehicle, to the exclusion of the defendant, at the time of the offense.

29–A M.R.S.A. § 2421(1).

[¶ 6] The court concluded that it could not give meaning to the final paragraph of the section unless that paragraph was interpreted to modify the "sole owner-operator" language of paragraph A to allow

forfeiture of a jointly held vehicle except in those cases where the joint owner could establish that she had the right to possession of the vehicle *to the exclusion of the defendant.* Because Diana Audette's joint ownership did not give her the right to exclude Charles from possession, the court concluded that her joint ownership did not preclude forfeiture.

[¶ 7] Accordingly, the issue presented is whether the final paragraph of section 2421(1) modifies the phrase "sole owner-operator" to include joint owners. "In construing a statute, we look first to the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then we need not look beyond the words themselves." *Cook v. Lisbon Sch. Comm.,* 682 A.2d 672, 676 (Me.1996). When the meaning of the statute is ambiguous we will look to legislative history for guidance. *See Coker v. City of Lewiston,* 1998 ME 93, ¶ 7, 710 A.2d 909, 910. The State argues that the language of the final paragraph, referencing the rights of a third party to possess the vehicle *to the exclusion of the defendant* creates an ambiguity because it can be read to modify the phrase "sole owner-operator" found in section 2421(1).

[¶ 8] To the extent that an ambiguity is created by that paragraph, we conclude that it does not modify the plain meaning of "sole owner-operator." A brief history of OUI forfeiture laws is instructive. In an effort to address the tragedies resulting from the presence of drunk drivers on the roads of Maine, the Legislature enacted a motor vehicle forfeiture law in 1988, along with several other provisions intended to strengthen the State's approach to drunk driving. The present version of section

---

2. Audette did not seek a jury trial. *See State v. One 1981 Chevrolet Monte Carlo,* 1999 ME 69, ¶ 9, 728 A.2d 1259, 1261.

3. Among other things, courts may look to the vehicle's title for evidence of ownership. *See* 29–A M.R.S.A. § 651 (1996 & Supp.1998). The Corvette, however, was not titled because

"[v]ehicles with a model year prior to 1984" are exempt from section 651. *See* 29–A M.R.S.A. § 652(13) (1996). The court therefore looked to other reasonable evidence of ownership, *see* 29–A M.R.S.A. § 101(50) (1996), and the State conceded at trial that the Audettes were joint owners of the Corvette.

2421(1) represents the third version of that forfeiture statute. When first enacted, the statute allowed for the forfeiture of *any vehicle* when it was operated by a person who had an ownership interest in the vehicle, and who operated the vehicle while intoxicated and while his license was under suspension for a previous OUI conviction. 29 M.R.S.A. § 1312–G (1988), *repealed by* P.L. 1989, ch. 872, § 7 (effective July 14, 1990).

[¶ 9] The first forfeiture statute, however, comprised a relatively complex set of procedures. An owner aggrieved by the seizure of his vehicle had the right to an immediate hearing at which he could petition the District Court for the release of his vehicle on a demonstration of hardship, *see id.* § 1312–G(2), or a claimant in the forfeiture proceeding could prevent forfeiture by demonstrating that hardship to persons other than the operator significantly outweighed the deterrent value of taking the vehicle and any risk to the public caused by the operator's continued access to the vehicle, *see id.* § 1312–G(5)(F). Moreover, at the defendant's arraignment, several election options were available which, if utilized, could prevent forfeiture of the vehicle. The defendant had the option to surrender the vehicle to the State: sell the vehicle; or, after waiving any claim for damages, allow the State to store the vehicle at no charge until the defendant's right to drive had been restored. *See id.* at § 1312–G(3).[4]

[¶ 10] In 1990, apparently responding to concerns regarding the complexity of the process and the lack of efficacy of the statute,[5] the Legislature repealed the forfeiture law and replaced it with "An Act ... to Remove the Habitual Drunk Driver Offender from the Highways." *See* 29 M.R.S.A. § 1312–I (1990), *repealed by* P.L. 1993, ch. 683, § A–1 (effective Jan. 1, 1995). The revisions eliminated the hardship provision and the other options available to allow an owner of a vehicle to avoid complete forfeiture. *See* 29 M.R.S.A. § 1312–I(1). With minor format revisions, those provisions remain in place today and guided the court's authority regarding the Audettes' automobile. *See* 29–A M.R.S.A. § 2421(1).

[¶ 11] In contrast to the relatively complex process contemplated by the first motor vehicle forfeiture provisions, the revamped provisions are simple and straightforward. The simplicity of the new process, however, is accompanied by significant restrictions on the circumstances under which forfeiture can be ordered.[6] The revisions represent a conscious legislative decision to trade the previously expansive opportunities for the State to seek forfeiture for certainty and clarity in the enforcement of forfeiture motions.[7]

[¶ 12] In order to obtain forfeiture of a vehicle under the revised statute, the State is required to prove the following facts:

4. The statute also placed restrictions on the forfeiture of jointly owned vehicles. It provided that even in the absence of hardship, "[t]he court shall nevertheless order the vehicle released to any co-owner who was not the operator if that co-owner was not previously notified of a prior seizure of that vehicle." *See id.* § 1312–G(2).

5. *See* Letter from John R. Atwood, Commissioner of the Department of Public Safety, to Barry Hobbins and Patrick Paradis, Co–Chairs of the Joint Standing Committee on the Judiciary (February 27, 1990) (Committee File for L.D. 2314) (stating that the original OUI forfeiture statute had gone largely unused since its enactment in 1988 and expressing the hope that amendments to that statute

would encourage "its use by our states' [*sic*] prosecutors").

6. The vehicle will be forfeited "when the *sole owner* is the operator and the operator is convicted of operating under the influence while operating after suspension for an operating-under-the-influence offense." Comm. Amend. A to L.D. 2314, No. H–1061, Statement of Fact (114th Legis.1990) (emphasis added).

7. "This amendment clarifies the procedure for the mandatory seizure of a vehicle owned by an individual convicted of a 2nd offense for operating under the influence and operating after suspension." House Amend. A to Comm. Amend. A to L.D. 2314, No. H–1097. Statement of Fact (114th Legis.1990).

first, that the defendant has been convicted of OUI; second, that the defendant has been convicted for a simultaneous offense of operating after suspension when the underlying suspension resulted from a previous OUI conviction; and third, that the defendant was the sole owner of the vehicle he was operating at the time of the events giving rise to those convictions. *See* 29–A M.R.S.A. § 2421(1).

[¶ 13] Once the State has proved each of those facts, the court is *required* to order the forfeiture, unless the elements of the final paragraph of section 2421(1) are satisfied by another person.[8] That person would be required to demonstrate that she is entitled to possess the vehicle (not that she is an "owner" of the vehicle) and that her possessory rights allow her to exclude the owner-defendant from possession.[9] The provisions regarding third parties with exclusive possessory interests in the vehicle do not modify or change the meaning of the term "sole owner-operator" in paragraph A. Rather, they merely allow third parties with exclusive rights to the vehicle to prevent the forfeiture.

[¶ 14] Although Audette had been convicted of both applicable crimes and there was no dispute that he had been operating the Corvette in the commission of those crimes, the court specifically determined that he was not the sole owner of the Corvette. The State therefore failed to prove an element necessary for forfeiture: that Audette was the "*sole* owner-operator" of the Corvette. The court was not required to determine whether Diana's interest allowed her to exclude Charles from possession of the Corvette. The fact that Charles owned the Corvette jointly with Diana precluded forfeiture.

[¶ 15] In sum, the Legislature, in an effort to strengthen and streamline the process for forfeiture of vehicles used by repeat OUI offenders, limited the court's authority to order forfeiture to those vehicles owned solely by the impaired driver. The Corvette at issue here was owned jointly by Diana and Charles Audette. Accordingly, the court erred when it granted the State's motion for forfeiture of the jointly owned Corvette.[10]

The entry is:

Judgment of forfeiture vacated.

---

**8.** Lienholders are specifically provided for in the statute. "A forfeiture of a motor vehicle encumbered by a perfected bona fide security interest is subject to the interest of the secured party if the party did not have knowledge of the act on which the forfeiture is based." 29–A M.R.S.A. § 2421(3) (1996).

**9.** Examples of such possessory rights would include the court ordered right of a spouse to possess a vehicle owned solely by the other spouse during the pendency of a divorce proceeding, *see* 19–A M.R.S.A. § 904(5) (1998), or the right of a creditor to possess the vehicle under a "turn-over" order of the court, *see* 14 M.R.S.A. § 3131(1), (2) (Supp.1998).

**10.** The court mistakenly appointed counsel to represent Audette in this forfeiture proceeding, which is civil in nature. *See United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir.1995); *Commomwealth v. $9,847.00 U.S. Currency*, 550 Pa. 192, 704 A.2d 612, 617 (1997); *see also State v. One 1981 Chevrolet Monte Carlo*, 1999 ME 69, ¶ 9, 728 A.2d 1259, 1261 (*in rem* forfeiture proceeding is civil in nature). Upon remand, the court may defer release of the Corvette pending reimbursement of counsel fees, or may take any other authorized action to assure payment of those fees.